IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **LINDA PAULINE NEELEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CASE NO. 5:09-CV-00656-KOB |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

The Claimant, Linda Pauline Neeley, filed applications for Disability Insurance Benefits and Supplemental Security Income Payments on November 16, 2005 alleging disability beginning on June 2, 2001 because of asthma, inner ear problems, anxiety, panic attacks, double pneumonia, emphysema, and arthritis in the knees, hands, and shoulders. (R. 88; 114). The Commissioner denied the claims.  The Claimant filed a timely request for a hearing before an Administrative Law Judge.  The ALJ held a hearing on December 6, 2007.  In a January 14, 2008 decision, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act and, therefore, was ineligible for Disability Insurance Benefits or Supplemental Security Income Payments. (R. 18).  On February 5, 2009, the Appeals Council denied the Claimant's request for review. (R. 1). The Claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1631(c)(3).  For the reasons stated

below, the decision of the Commissioner will be reversed and remanded.

## II. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standard and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Id.* at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirely to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

In this appeal, the Claimant argues that the Commissioner erred in three ways. First, the Claimant alleges that the ALJ failed to properly treat her osteoarthritis as a severe impairment. Second, the Claimant asserts that the Commissioner improperly rejected the opinion of treating

physician Dr. Ronald Calhoun as to the Claimant's ability to work. Third, the Claimant alleges that the ALJ improperly applied 42 U.S.C. § 423(d)(5)(A) in assessing the impact of the Claimant's osteoarthritic pain.

### III. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. I?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520 and 416.920.

The Claimant bears the burden at the second step of the sequential evaluation of proving that she has a severe impairment or combination of impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "An impairment or combination of impairments is not severe if it does not significantly limit [the Claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a), [20 C.F.R.§ 404.921 (a)], *see also Crayton v. Callahan*, 120 F.3d 1217,

1219 (11th Cir. 1997). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *McDaniel*, 800 F.2d at 1031 (11th Cir. 1986); *see also Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

The ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must give the testimony of a treating physician substantial or considerable weight unless he shows "good cause" to the contrary. *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists where the opinion of the treating physician is accompanied by no objective medical evidence, is wholly conclusory, or is contradicted by the physician's own treatment records. *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).

A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999). The ALJ may consider the claimant's daily activities in evaluating and discrediting complaints of disabling pain. *Cf. Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

## IV. FACTS

The Claimant was forty-seven years old at the time of the administrative hearing decision. She has an eighth grade education. (R. 146). Her past work experience includes positions as a cashier, sewing machine operator, and fast food worker. (R. 135). She is presently unemployed. (R. 100). The Claimant alleges an onset date of June 2, 2001. (R. 91). According to the Claimant, she became unable to work because of asthma, inner ear problems, anxiety, panic attacks, double pneumonia, emphysema, and arthritis in the knees, hands, and shoulders. (R. 65; 114).

*Physical Limitations*

Records dated September 16, 2002 to February 20, 2003 from Keithly Family Practice show that the Claimant was prescribed Xanax, Lortab, Albuterol, and Tussinex. During her first visit, on September 16, 2002, Dr. Larry Keithley diagnosed the Claimant with degenerative disc disease and asthma. (R. 217).

On September 6, 2005, the Claimant visited the emergency room and was admitted to Jackson County Hospital (JCH), complaining of worsening shortness of breath, coughing, and chest pain. (R. 171). The Claimant indicated that she smoked a pack of cigarettes per day and used Albuterol for asthma. (R. 172). She remained at JCH until September 13, 2005, when she was discharged and transferred to Huntsville Hospital for pulmonary care because the pneumonia did not respond to treatments. (R. 171). Upon discharge from JCH, Dr. Usman Barula, a pulmonologist, diagnosed the Claimant with bronchial asthma exacerbation and interstitial pneumonia. (R. 173).

At Huntsville Hospital, Dr. Keith Young, a pulmonologist, diagnosed the Claimant with

community-acquired pneumonia, chronic pain syndrome (CPS), and chronic obstructive pulmonary disease (COPD). He discharged the Claimant on September 20, 2005 with prescriptions for Augmentin, Xanax, Lortab, and Combivent. (R. 176). On September 22, 2005, Dr. Keithly refilled the Claimant's prescriptions. (R. 214). The Claimant continued to see Dr. Keithly in January and February of 2006. He treated her for incontinence, emphysema, asthma, CPS, and anxiety. (R. 209-210).

On November 23, 2005, the Claimant appeared at the JCH emergency room complaining of shortness of breath and chest pain. (R. 193; 198). The ER noted that the Claimant had audible wheezing but released her because she did not want to be admitted during Thanksgiving. The ER nurse encouraged the Claimant to stop smoking. (R. 1199).

On March 3, 2006, Dr. V. Snehaprabha Reddy, a general internist, performed a consultative exam on the Claimant. The Claimant indicated pain in her shoulders, knees, and hands. She reported stiffness and numbness in her hands and right arm in the mornings, conditions that lasted for thirty to forty-five minutes. The Claimant also said that she had asthma (since childhood), emphysema, dyspnea, inner ear disease, and nausea. (R. 218). Dr. Reddy indicated that the Claimant had bilateral expiratory wheezing in the lungs. The Claimant's finger dexterity was within normal limits. Dr. Reddy concluded that the Claimant had osteoarthritis (more marked in the right shoulder), COPD, and likely had carpal tunnel syndrome in both hands. (R. 219).

On April 4, 2006, Dr. Mary Arnold, a psychologist, performed a consultative exam on the Claimant. (R. 231). Dr. Arnold noted that the Claimant was neatly groomed and that her mood and affect were in the normal range. Her diagnostic impression was caffeine dependence,

adjustment disorder, personality disorder, chronic pain, and COPD. Dr. Arnold classified both the Claimant's adjustment disorder and personality disorder as NOS, or "not otherwise specified," meaning that the Claimant's symptoms did not meet the criteria for any specific disorder. Dr. Arnold also concluded that the Claimant had financial problems and problems with access to healthcare. (R. 233).

On April 25, 2006, Dr. Gordon Rankart, a psychologist, completed a psychiatric assessment of the Claimant. (R. 235). He noted the findings of Dr. Arnold's exam. (R. 247). He also noted that the Claimant had a mild limitation in daily living activities, social functioning, concentration, persistence, and pace. (R. 245). He concluded that the Claimant "d[id] not present with any severe mental functional limitations that would prevent her from performing . . . [substantial gainful activity]." (R. 247).

On April 26, 2006, Dr. Earle Shugerman, an internist, completed a consultative Physical Residual Functional Capacity Assessment based on the Claimant's medical records. (R. 249-256). He indicated that the Claimant could stand, walk, and sit for six hours in an eight hour workday, occasionally lift fifty pounds, frequently lift twenty-five pounds, and had limited ability in the upper extremities to push or pull. (R. 250). He noted that the Claimant could frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but not ladders, ropes, or scaffolds. (R. 251). He also noted that the Claimant could not reach overhead on the right but did have unlimited handling, feeling, and fingering. (R. 252). Dr. Shugerman concluded that although the Claimant could be around unlimited wetness, noise, and vibration, she should avoid concentrated exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, and all hazardous machinery. (R. 253).

Between October 30, 2006 and December 10, 2007, the Claimant received treatment from Dr. Ronald Calhoun, a family practitioner. (R. 264). During this time, the Claimant complained of lower back, shoulder, hip, neck, and cervical pains. She received medications for degenerative disc disease, depression, anxiety, asthma, COPD, and lower back pain. (R. 265-271). Dr. Calhoun concluded that the Claimant was unable to work because of her orthopedic condition, which included low back pain and cervical disc disease. (R. 273).

*The ALJ Hearing*

On December 6, 2007, the ALJ held a hearing at the Claimant's request. (R. 27). At the hearing, the Claimant testified that she had lost thirty pounds within the preceding year because she had not had an appetite. (R. 34-35). She indicated that she did not have any income or insurance, but that her mother helped with her doctor bills. (R. 35). The Claimant stated that she had neck and shoulder pain that began two to three years earlier and required her to stay in bed for an extra thirty to forty-five minutes in the morning. (R. 35-36). The shoulder pain, which was more severe in her right shoulder, was a burning sensation that ran from her neck to her shoulder and lasted between six and seven hours per day. (R. 36-37). The Claimant testified that her medications brought the pain down to a five or six on a scale of ten, but that the pain was an eight if she used her arm. (R. 38). The Claimant indicated that she was taking Hydrocodone/Lortab 10 for pain management, which made her drowsy and sleepy on occasion. (R. 39).

The Claimant further testified that she could not return to her job as a cashier at Hardee's because pressing buttons and making repetitive movements would increase her pain and cause her hands to swell. (R. 40). The Claimant stated that she dropped items at least five times a day

because her hands became numb and stiff for ten to fifteen minutes at a time. (R. 41). The Claimant testified that she has experienced lower back pain since 1986, but that it did not prevent her from working until three or four years prior to the hearing. (R. 42). She stated that the pain in her arms, hips, and back slowed her down at Hardee's. She initially stated that she was experiencing the same amount of pain as she did while working at Hardee's, but subsequently changed her testimony to reflect that her pain had worsened. (R. 43).

The Claimant reported daily back pain that ran down her hip to her leg, which occurred fifteen to twenty minutes per day and limited the amount of time she could stand or sit to thirty minutes. (R. 44-45). The Claimant said that the pain forced her to lie down for twelve hours a day on average. (R. 46).

The Claimant testified that she suffered knee pain resulting from a pinched nerve that she believed was the result of a 1986 car accident. (R. 46-47). She reported that, over the course of the preceding year, her knee began to "give out" after walking between fifteen and thirty feet. (R. 46).

The Claimant also said that she had breathing problems, but continued to smoke three to five cigarettes per day because she is addicted to nicotine. (R. 47). The Claimant said that she had asthma and bronchitis and was taking a breathing treatment for COPD. The Claimant indicated that these conditions caused shortness of breath, which in turn caused wheezing and tightness in her chest that lasted all day.; (R. 48). She reported that dust, vacuuming, colognes, air fresheners, heat, lint, fibers, gasoline, flowers, and pollen caused shortness of breath. (R. 48-49). The Claimant stated that she left her previous job as a sewing machine operator because the lint and fibers caused shortness of breath. (R. 49). The Claimant reported that she used a

prescribed inhaler and breathing treatment to relieve the shortness of breath and had been using a nebulizer for three years: once in the morning, once at night, and sometimes during the day. The Claimant reported that this treatment made her dizzy, forcing her to sit for twenty to thirty minutes. (R. 50).

The Claimant testified that her anxiety caused her to feel like "the walls [were] closing in on [her]" and like she was going to have a panic attack during the hearing. *Id*. She claimed to suffer panic attacks two to three times a day, which occurred when she became upset or was around people or crowds. (R. 55). She stated that she would retreat to her room for an hour and a half to two hours during a panic attack. The Claimant also testified to stress-related incontinence, which forced her to change clothes three to four times a day. (R. 56-57).

The Claimant said that she could carry about ten pounds for forty feet, twice a day but that she must rest after walking forty feet. (R. 52). She testified that she cooked two or three times a week and vacuumed once a month because she "can't stand the dust." (R. 53-54). The Claimant also said that she drove her mother's car. (R. 57).

After questioning the Claimant, the ALJ questioned the vocational expert (VE). (R. 60). The ALJ first asked the VE whether an individual sharing the Claimant's age, education and work history, and physical limitations could perform the Claimant's previous work. (R. 62-63). The VE responded affirmatively. The ALJ then asked the VE whether an individual with the same limitations could perform a "light job" as defined by the Social Security Administration. The VE again responded affirmatively. (R. 63).

The Claimant's attorney then questioned the VE. He first asked whether any work existed or was available in the regional or national economy for an individual who suffered from level

eight pain, which caused her to lie down for up to twelve hours per day. The VE replied that no such work existed in the economy based on those facts. The Claimant's attorney then asked the VE whether any work existed in the regional or national economy for an individual whose arthritis prevented her from performing an eight-hour workday. The VE responded that no such work existed. (R. 64).

*The ALJ's Decision*

On January 14, 2008, the ALJ issued a decision finding that the Claimant was not disabled under the Social Security Act. (R. 18). The ALJ found that the Claimant had not engaged in substantial gainful activity since the alleged onset date and listed the Claimant's alcohol abuse, COPD, and affective mood disorders as severe impairments. (R. 12). However, none of the Claimant's impairments, either singly or in combination, met the criteria of any of the listed impairments in 20 C.F.R. pt. 404, subpart P, app. 1. (R. 14).

The ALJ found that the Claimant's RFC allowed her to perform light work, but restricted her from climbing ladders, ropes, scaffolds, and reaching on the right. He also said that she should avoid concentrated hot or cold temperatures, humidity, hazardous machinery, unprotected heights, fumes, odors, dusts, gases, and poor ventilation. (R. 15). The ALJ determined that "the Claimant's statements concerning the intensity, persistence, and limiting effects of [her alleged] symptoms [were] not entirely credible." (R. 16).

In making his decision, the ALJ considered the Claimant's statements about pain all over her body, breathing problems, depression, anxiety, and incontinence. He noted that the Claimant cooked, vacuumed, did laundry, washed dishes, and helped take care of her grandchild and ill stepfather. The ALJ believed these activities to be contradictory to the Claimant's reports that she

had to lie down for up to twelve hours a day because of her pain, emphasizing that no record exists of the Claimant having to lie down for that amount of time. (R. 16).

Regarding the Claimant's breathing problems, the ALJ acknowledged that the Claimant's asthma and COPD improved with treatment. The ALJ also noted that the Claimant's continued smoking contradicted her claims that she cannot be around pollen and dust. *Id.*

Regarding the Claimant's depression and anxiety, the ALJ determined that the Claimant's symptoms were not as severe as she alleged because despite claiming that she suffered two to three panic attacks a day, she thought a panic attack was not wanting to be around people. He noted that her daily activities, which included taking care of her grandchild and stepfather, household chores, and dressing without help, were not as limited as one would expect for someone suffering from a disabling mental problem. *Id*. The ALJ also noted that the Claimant was able to get nine hours of sleep per night and eats two meals per day. The ALJ stated that no objective evidence existed to support the Claimant's alleged incontinence. (R. 17). .

The ALJ accorded the most weight to the opinions of Drs. Arnold and Reddy, both consulting physicians.  In the ALJ's opinion, the consulting physicians' opinions were better reflections of the record.  He gave little weight to the opinion of Dr. Calhoun because his opinion was inconsistent with the Claimant's medical records, daily living activities, and his own treatment records, which indicated that the Claimant believed that "she was doing okay." (R. 17).

Based on the Claimant's medical records, her RFC, and the hearing testimony, the ALJ concluded that the Claimant could perform work at the light exertional level. The Claimant's previous positions as a fast food worker, cashier, and sewing machine operator all fall within the light work category. (R. 17). Therefore, the ALJ determined that the Claimant was not disabled

within the meaning of the Social Security Act. (R. 18).

## V.  DISCUSSION

The Claimant alleges that the Commissioner committed three reversible errors. First, the Claimant alleges that the ALJ failed to properly view her osteoarthritis as a severe impairment. Second, the Claimant asserts that the Commissioner improperly rejected the opinion of treating physician Dr. Ronald Calhoun as to the Claimant's ability to work. Third, the Claimant alleges that the ALJ improperly applied 42 U.S.C. § 423(d)(5)(A) in assessing the impact of the Claimant's osteoarthritic pain. The court's conclusion that the case is due to be remanded for further development of the facts pretermits discussion of the Claimant's second and third alleged errors.

**A. The ALJ failed to fully and fairly develop the record with regard to the Claimant's osteoarthritis.**

The ALJ has a basic obligation to fully and fairly develop the record. *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1986).  The ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 735. The Claimant argues that the ALJ failed to consider her osteoarthritis when determining her RFC. When osteoarthritis is found to be an impairment, severe or not, it should be considered when determining a claimant's RFC. A determination based on a full review of the entire record cannot occur without investigating the role osteoarthritis plays in the Claimant's ability to work. A decision that focuses on one aspect of the evidence, while disregarding or failing to explicitly discredit other contrary evidence, is not based on substantial evidence.  *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986).

The Commissioner argues that failure to consider the Claimant's osteoarthritis in determining her RFC is not reversible error because the ALJ found that the Claimant suffered from three other severe impairments. In essence, the government argues that as long as the ALJ finds at least one severe impairment, he can completely ignore the Claimant's other alleged impairments in determining her RFC. However, a finding of disability is often based on a combination of factors; a declaration of disability is sometimes not wholly attributable to a single, original condition.  As such, where a claimant has alleged several impairments, the ALJ has a duty to carefully determine whether a disability may arise from such a combination of impairments.  *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).

The cases cited by the government do not support the argument that an ALJ may disregard an alleged impairment so long as he labels at least one impairment as severe. Although the ALJ in *Perry v. Astrue*, 280 Fed. Appx. 887 (11th Cir. 1984), failed to specifically identify which impairments he considered severe, he made sure to "enumerat[e] and evaluat[e] all of the impairments and symptoms alleged." *Id.* at 894. Likewise, in both *Council v. Comm'r of Soc. Sec.*, 127 Fed. Appx. 473 (11th Cir. 2004) and *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240 (6th Cir. 1987), the ALJ took the claimant's alleged impairment into account when determining his or her RFC even though he ultimately concluded that the particular impairment was not severe. In the instant case, the ALJ ignored the Claimant's alleged impairment altogether in determining whether she is disabled.

In his opinion, the ALJ recognized that the law required him to consider all relevant evidence and all impairments, including impairments that are not severe, when determining the Claimant's RFC.  *See* R.11; 20 C.F.R. § 404.1545(a).  However, the ALJ did not correctly apply

this legal standard or support his conclusion with substantial evidence because he failed to consider the Claimant's osteoarthritis when determining her RFC.

The ALJ is not required to discuss, *ad nauseam*, each impairment; however, he must address each impairment and consider the effect of the combination of impairments to determine whether the combined impairments render the Claimant disabled. *See McCray v. Massanari*, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001). The ALJ was unquestionably aware of the Claimant's alleged osteoarthritis. The Claimant listed "arthritis in the knees, hands, and shoulders" on her Disability Report. (R. 114). Additionally, the Claimant told the ALJ at the December 6, 2007 hearing that her doctor had diagnosed her with arthritis. (R. 41). Moreover, the ALJ acknowledged in his opinion that Dr. Reddy diagnosed the Claimant with osteoarthritis on March 3, 2006. (R. 13). Yet, despite his knowledge of the Claimant's osteoarthritis, he failed to evaluate this alleged impairment in his opinion.

The ALJ concluded that the Claimant suffers from three severe impairments: alcohol abuse, chronic obstructive pulmonary disease, and affective mood disorders. (R.12). His opinion evaluated the objective evidence associated with her complaints about breathing problems, depression and anxiety, incontinence, and "pain all over her body." (R. 16-17). However, the court was unable to find any mention in the ALJ's opinion of the effect that osteoarthritis, either singly or in combination with other impairments, may have had on the Claimant's RFC. Accordingly, because the ALJ failed to consider all of the Claimant's alleged impairments, he failed to apply the correct legal standard and did not support his opinion with substantial evidence.

**B. Issues II and III**

Because the first issue on appeal is meritorious, the court does not need to address whether the Commissioner improperly rejected the opinion of treating physician Dr. Ronald Calhoun or whether the ALJ improperly applied 42 U.S.C. § 423(d)(5)(A) in assessing the impact of the Claimant's osteoarthritic pain.

## VI.  CONCLUSION

For the above reasons, the court finds that the ALJ failed to evaluate the effect of the Claimant's osteoarthritis when determining whether she is disabled. Accordingly, substantial evidence does not support his decision. Therefore, the court will remand the Commissioner's decision for the ALJ to determine whether the Claimant is entitled to Disability Insurance Benefits or Supplemental Security Income Payments.

The court will enter a separate Order.

DONE and ORDERED this 27th day of September 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE